# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARK ANTHONY CARTER,

    *Plaintiff,*

vs.

Case No. 16-1350-EFM-GEB

SPIRIT AEROSYSTEMS, INC., et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Pro se plaintiff Anthony Carter seeks monetary damages against his former employer, Spirit Aerosystems, Inc. ("Spirit"), his former labor union, International Association of Machinists and Aerospace Workers ("IAM"), Spirit's legal representative, Foulston Siefkin LLP ("Foulston"), and the United States Department of Labor ("DOL"). All of Carter's claims originate from his time working for Spirit. Carter alleges Spirit unlawfully discriminated against him and ultimately fired him in retaliation for making a formal complaint regarding his mistreatment.

Before the Court are three motions related specifically to Carter's claims against Spirit. On July 12, 2017, Spirit filed a partial motion to dismiss Carter's claims. On July 21, 2017, Carter asked the Court for leave to file a seconded amended complaint, and Spirit was the only defendant who opposed the motion. On September 12, 2017, Spirit filed a motion to clarify an

earlier ruling from the Court. For the sake of judicial economy, and due to the interrelated nature of these motions, the Court addresses all three in this Order. For the following reasons, Carter's Motion to Amend his First Amended Complaint (Doc. 34) is denied, Spirit's Partial Motion to Dismiss (Doc. 23) is granted, and the Court considers Spirit's Motion for Clarification (Doc. 54) adequately addressed.

## I. Factual and Procedural Background[1]

Carter, a former underwing mechanic for Spirit, frequently missed work because of his own work-related injuries and his wife's health condition. Carter maintains that all of his absences were excused leaves of absence under the Family Medical Leave Act ("FMLA"). On August 25, 2014, Carter's former manager, Trey Fredrick, told Carter that he would not be offered the opportunity to work overtime because he was so frequently absent from work. Furthermore, Carter says Frederick and Lori Myers—another Spirit supervisor—threatened and attempted to transfer him to the physically demanding "aft cowling" position. Fredrick and Myers insisted Carter work in the "aft cowling" position despite Carter's injury history and upcoming doctor's appointment where he intended to receive medical restrictions on how much heavy lifting he could do.

On August 28, 2014, Carter filed an internal complaint with Spirit's Equal Employment Opportunity Department regarding his perceived mistreatment. Carter claims Frederick and Myers retaliated against him for making the complaint by repeatedly harassing him in person and by text message, threatening to discipline him, changing some of his absences in Spirit's system

---

[1] The facts are taken from Carter's Amended Complaint and are accepted as true for the purposes of this ruling.

from "excused" to "unexcused," and placing him on stricter work restrictions—for example, requiring he ask permission before taking restroom breaks.

During this time, Spirit repeatedly disciplined Carter for failing to notify his supervisors that he would be absent on days he was unable to work. Spirit gave Carter multiple warnings and two suspensions for violating the company's call-in policy. On July 21, 2015, Spirit fired Carter for the same conduct.

Between December 14, 2014 and July 27, 2015, Carter filed five grievances with his labor union, IAM. Each grievance was made after Carter was disciplined for missing work without calling his supervisor. Carter's final grievance was in response to Spirit terminating his employment. On November 17, 2015, IAM and Spirit sent a joint letter to Carter that said: "After a thorough investigation by the Union and the Company, it is agreed that these grievances will not be moved to the next level and are considered closed."

Carter also filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The first charge was filed in 2014 while Carter still worked for Spirit. On May 6, 2015, the EEOC notified Carter that his first charge would be dismissed and provided Carter a right-to-sue letter. The EEOC letter said:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. . . . This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit *must be filed within 90 days of your receipt of this notice*; or your right to sue based on this charge will be lost. (emphasis in original).

Carter filed a second charge with the EEOC after he was fired—that charge was likewise dismissed by the EEOC and Carter was issued a second right to sue letter on June 13, 2016.

Carter, proceeding pro se, initiated this lawsuit September 9, 2016—more than a year after receiving the first right-to-sue letter from the EEOC. Carter's original complaint only alleged a violation of the Americans with Disabilities Act ("ADA") against Spirit. On June 21, 2017, Carter filed an amended complaint adding three defendants: Foulston, IAM, and DOL. Carter also added claims under the FMLA, the Kansas Workers' Compensation Act, K.S.A. § 60-1009, common law defamation, and breach of contract.

In July 2017, Sprit filed a partial motion to dismiss, seeking dismissal of Carter's ADA claim arising from his 2014 EEOC charge, the breach of contract claim, the workers' compensation claim, and the § 60-1009 claim. Carter filed a Response to Spirit's partial motion to dismiss, which included a request for leave to file a second amended complaint. Carter says the second amended complaint would specify which claims apply to which defendants, would name additional defendants in the suit, and would correct errors in the Amended Complaint. For example, in the Amended Complaint, Carter mistakenly brought a claim under § 60-1009—a Kansas civil procedure statute that appears entirely irrelevant to this suit—whereas he intended to bring a claim under § 44-1009, which is the Kansas Act Against Discrimination ("KAAD"). It is unclear from Carter's motion who he seeks to add as defendants.

On August 15, 2017, after Spirit's partial motion to dismiss had been fully briefed by the parties, Carter filed a document titled "Plaintiff's Response to Defendant's Motion to Dismiss, Defendant's Response to Plaintiff's Response." Evidently, it was Carter's intention for this document to function as three separate briefs: a Surreply to Spirit's partial motion to dismiss, a Reply in support of his motion for leave to file a second amended complaint, and a Response to Foulston's motion to dismiss. Carter filed this document without seeking prior approval from

the Court. Accordingly, the Court entered an order striking the surreply portion as improperly filed.

On September 12, 2017, Spirit filed a motion to clarify the Court's order striking Carter's Surreply. Specifically, Spirit desired clarification on whether the Court struck Carter's "statement of uncontroverted facts"—a section included at the end of Carter's brief that comprised of 54 paragraphs containing additional facts. Spirit took the position that these facts should be considered a part of the stricken surreply portion of Carter's brief. Alternatively, if the Court would consider these additional facts in deciding Carter's motion to amend, Spirit requested permission to file its own surreply to address the facts.

So, the three issues before the Court are: (1) whether Carter should be granted leave to file a second amended complaint, (2) whether the Court will consider the additional facts supplied in Carter's responsive briefing, and (3) whether Carter's pleadings survive Spirit's partial motion to dismiss.

## II.    Legal Standard

**A.    Motion to Amend**

A "party may amend its pleading once as a matter of course" within 21 days after serving it, or within 21 days after service of a responsive pleading or a Rule 12 motion.[2] Thereafter, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."[3] Under Rule 15(a), leave to amend a complaint is freely given when justice so requires. Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided

---

[2] Fed. R. Civ. P. 15(a)(1).

[3] Fed. R. Civ. P. 15(a)(2).

on its merits rather than on procedural niceties.' "[4] Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[5] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason."[6] It is within the Court's sound discretion whether to allow a proposed amendment after the permissive period.[7]

**B.    Motion to Dismiss**

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, to "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[8] Under this standard, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[9] The plausibility standard enunciated in *Bell Atlantic v. Twombly*, seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause action,' which the Court stated 'will not do.' "[10] A claim is facially plausible if the

---

[4] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[5] *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[6] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citing *Jefferson Cty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858–59 (10th Cir. 1999)).

[7] *See id.*; *Foman*, 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[10] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[11]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[12] However, the Court cannot "assume the role of advocate for the pro se litigant."[13] The Court will not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14] The Court need only accept as true a plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[15]

### III. Analysis

**A. Motion to Amend**

Carter requests permission from the Court to file a second amended complaint. The basis for Carter's request is to fix mistakes in his Amended Complaint, add more defendants to the suit, and clarify which claims apply to which defendants. In return, Spirit argues that Carter's motion to amend should be denied "because any proposed amendment is futile." Before addressing the futility of allowing Carter to amend his pleading, the Court first considers whether Carter's motion followed the proper procedure under the Court's local rules.

---

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (internal citations omitted).

[13] *Id.*

[14] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[15] *Hall*, 935 F.2d at 1110 (citation omitted).

In addition to Rule 15 of the Federal Rules of Civil Procedure, the Court has its own local rules governing how to request leave to amend a pleading.[16] D. Kan. Rule 15.1(a) states:

> A party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must: (1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6.

While a pro se party is afforded greater leniency than a party with legal representation, "a plaintiff's pro se status does not relieve him from complying with this Court's procedural requirements."[17] The failure to comply with Rule 15.1 is sufficient reason for the Court to deny a motion to amend; although dismissal under Rule 15.1 is generally without prejudice, giving the party an opportunity to re-file the pleading in conformity with the rules.[18]

Here, Carter did not attach a copy of his proposed Second Amended Complaint. The obvious purpose of Rule 15.1 is to compel parties to provide the Court with the information it needs to determine whether a motion to amend is warranted. Without a copy of the proposed pleading, the Court cannot conclusively determine if allowing Carter to amend his complaint would promote justice or be entirely futile. Although Carter's omission limits the Court's ability to do a thorough analysis, the Court is receptive to Spirit's argument—based on the information Carter has provided—that any amendment would be futile. Many of the deficiencies in Carter's Amended Complaint, which the Court addresses below in section III.C, are unlikely to be

---

[16] *See* D. Kan. Rule 15.1.

[17] *Auld v. Value Place Prop. Mgmt. LLC,* 2010 WL 610690, at *14, n.79 (D. Kan. 2010) (citing *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006); *see also Santistevan v. Colo. Sch. of Mines,* 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants).

[18] *See Fuller v. Kansas*, 2017 WL 193168, at *3 (D. Kan. 2017) (internal citations omitted); *Marshall v. Benjamin*, 2017 WL 3026155, at *1 (D. Kan. 2017); *Getz v. Bd. of Cty. Comm'rs of the Cty. of Shawnee, Kan.*, 194 F. Supp. 2d 1154, 1169 (D. Kan. 2002).

remedied by adding new defendants or correcting minor mistakes. Carter's offer to clarify which claims apply to which defendants might prove helpful to the Court and defendants, but it does not change the material allegations already present in Carter's Amended Complaint.

Carter does identify one amendment that has the potential to correct a deficiency with his most recent complaint: amending the claim that he mistakenly brought under § 60-1009 to a KAAD violation under § 44-1009, which is the claim Carter originally intended to bring. Spirit argues that a KAAD claim would still be subject to dismissal and, therefore, it would be futile to allow Carter to amend his complaint to add such a claim. The Court agrees.

Before bringing a KAAD claim, a plaintiff is required to exhaust administrative remedies by filing a complaint with the Kansas Human Rights Commission ("KHRC") within six months of the discriminatory act.[19] Failure to exhaust administrative remedies is a jurisdictional bar to filing suit in federal court.[20] "[F]iling a charge with the EEOC is insufficient to initiate an action under the KAAD; the plaintiff must file a separate charge with the KHRC."[21] Once a plaintiff receives a right-to-sue letter from the KHRC, the plaintiff has 45 days to file a civil action in court, and the failure to comply with these time restrictions is grounds for dismissal.[22]

---

[19] *Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 885 P.2d 1197, 1204 (1994) (internal citations omitted); K.S.A. § 44-1005(i) ("[D]ismissal of a complaint in accordance with this section shall constitute final action by the commission which shall be deemed to exhaust all administrative remedies under the Kansas act against discrimination for the purpose of allowing subsequent filing of the matter in court by the complainant.").

[20] *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996).

[21] *Weber v. Bd. of Cty. Comm'rs of Chase Cty., Kan.*, 2014 WL 5848971, at *1 (D. Kan. 2014) (citing *Hughs v. Valley State Bank*, 26 Kan. App. 2d 631, 994 P.2d 1079, 1086–87 (1999)).

[22] *Peavy v. Labor Source*, 2015 WL 4617419, at *6 (D. Kan. 2015) (citing K.S.A. §§ 44-1005(i), 44-1021(a)).

Here, Carter's Amended Complaint alleges he filed a charge against Spirit with the KHRC[23] and the EEOC. Carter's two EEOC charges and subsequent right-to-sue letters are irrelevant to whether he exhausted his administrative remedies under the KAAD; the Court only looks to Carter's November 7, 2014 charge with the KHRC. The standardized form Carter used in filing his Second Amended Complaint instructed him to attach a copy of any right-to-sue letters he received from the EEOC or the KHRC to his complaint, and Carter did attach two letters from the EEOC. But Carter neither includes a right-to-sue letter from the KHRC nor alleges he actually received one. Amending Carter's complaint is futile if the complaint, as amended, would be subject to dismissal for any reason. Carter's KAAD claim would still be subject to dismissal because he failed to allege facts showing he complied with KAAD's exhaustion requirement or filed his suit within 45 days of receiving a right-to-sue letter.

In summary, Carter's motion for leave to file a second amended complaint is denied for two reasons. First, Carter did not comply with the Court's local rules when he filed a motion for leave to amend without including a copy of the proposed pleading. Second, to the extent Carter informed the Court what amendments he would make, the Court concludes those amendments are futile because the claims as amended would still be subject to dismissal.

**B.     Motion to Clarify**

Spirit filed a motion asking for clarification on the scope of the Court's August 16, 2017 order striking Carter's unauthorized surreply. Specifically, Spirit asks whether the Court will consider Carter's "Statement of Uncontroverted Facts" or whether that section has been stricken.

---

[23] Carter's Second Amended Complaint includes a standardized employment discrimination form on which Carter marks that he filed a charge of discrimination with the "Kansas State Division of Human Rights or the Kansas State Commission on Human Rights" on November 7, 2014. Despite some discrepancy in the language, the Court, construing the complaint liberally, presumes for the purposes of this motion that Carter filed a charge with the KHRC.

Spirit argues the facts section should be considered part of the stricken surreply. However, in the alternative, Spirit requests leave to file a surreply to respond to the additional facts if the Court relies on them in deciding Carter's Motion to Amend.

When reviewing a motion to dismiss, the Court "generally must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference."[24] However, in the Tenth Circuit, "it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint."[25] Within the Court's discretion, a claim that would otherwise be dismissed based solely on the allegations in the complaint can be saved by additional, consistent facts provided in subsequent briefing.[26]

Here, the Court, in its discretion, does take Carter's statement of facts into consideration. The Court is unpersuaded by Spirit's argument that the statement of facts belongs exclusively to one portion of Carter's document and should be stricken entirely as part of the unauthorized surreply. Essentially, Carter used one statement of facts section to support what should have been three separate briefs. Rather than strike the entire section, the Court considers the additional facts, but only to the extent they support the legal arguments in Carter's Motion to Amend and Carter's Response to Foulston's Motion to Dismiss. The Court does not consider the

---

[24] *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1210 (D. Kan. 2002).

[25] *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

[26] *Id.*; *Servi-Tech, Inc. v. Burmeister*, 2016 WL 5944502, at *6 (D. Kan 2016) ("But [Plaintiff's] claim is saved by its response to [Defendant's] motion to dismiss. Or, more accurately, [Plaintiff's] claim is saved by the forgiving standard under which the Court will consider additional facts asserted in a response brief as long as they do not contradict the petition.").

additional facts in deciding Spirit's Partial Motion to Dismiss because Carter did not have permission to submit a surreply to Spirit's motion to dismiss.

The Court denies as moot Spirit's request for leave to file a surreply addressing Carter's statement of facts. The Court reviewed and considered Carter's statement of facts before reaching its holding on Carter's motion to amend, but the additional facts did not persuade the Court that Carter's amendments would be anything but futile. Since Carter's Motion to Amend is denied, the Court finds it unnecessary to grant Spirit leave to file a surreply and that request is denied as moot.

**C.     Partial Motion to Dismiss**

Spirit requests dismissal of the ADA claim arising out of Carter's 2014 EEOC charge, the workers' compensation claim under § 44-501, the claim under "Civil Procedure K.S.A. [§] 60-1009," and the breach of contract claim. After reviewing the parties' briefs and applicable law, the Court grants Spirit's partial to dismiss.

*1.     ADA*

Spirit argues that Carter's ADA claim arising out of his 2014 EEOC charge fails as a matter of law for being untimely. The relevant law is straightforward:

> [A] party who wishes to pursue a claim of employment discrimination in federal court must first file a formal charge with the EEOC within 300 days of the alleged unlawful employment practice. If the EEOC does not wish to pursue the claim on the party's behalf, it will issue a "right-to-sue letter," and under 42 U.S.C. § 2000e–5(e)(1), *the party has 90 days after receiving such a letter to file a lawsuit. If the claimant fails to file suit within 90 days, the claims alleged in the EEOC charge are foreclosed*, even if the 300–day period for filing charges with the EEOC has not elapsed.[27]

---

[27] *Tadlock v. Marshall Cty. HMA, LLC*, 603 F. App'x 693, 700 (10th Cir. 2015) (emphasis added) (internal quotations omitted)."

The EEOC issued Carter's first right-to-sue letter on May 6, 2015, and Carter did not bring his lawsuit until September 9, 2016. Carter raises a handful of arguments in opposition to Spirit's motion. First, Carter's argues that Spirit waived its right to challenge his ADA claim because Spirit did not file a motion to dismiss his original complaint, but this argument lacks a legal basis.[28] Second, Carter makes the entirely conclusory statement that Spirit acted in bad faith and submitted false information to the EEOC investigator. Even if Carter's claim is true, it does not address why he failed to bring his claim in a timely manner.[29] None of Carter's arguments negate the simple truth that Carter failed to comply with the statute of limitations, and the Court finds no sufficient reason to toll the statute of limitations. Therefore, the Court grants Spirit's motion to dismiss Carter's ADA claim arising out of the 2014 EEOC charge.

2. *Kansas Workers' Compensation Statute*

Spirit seeks dismissal of Carter's claim under the Kansas Workers' Compensation Act. In the Second Amended Complaint, Carter initially indicates he is bringing a claim under the Kansas Workers' Compensation Act, citing to K.S.A. 44-501. Later, Carter refers to his claim as a workers compensation retaliation claim, which is a cause of action arising out of common law, not the statute itself.[30] It is unclear whether Carter intended to bring two separate claims—a claim under the Kansas Workers' Compensation statute and a common-law retaliation claim—or

---

[28] *See Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) ("An amended complaint [supersedes] an original complaint and renders the original complaint without legal effect."); *see also Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (explaining that after an amended complaint has been filed, dispositive motions should be directed to the new, superseding complaint).

[29] Carter also requests that the Court allow him to admit evidence of his 2014 EEOC charge at trial to support his other claims, even if he cannot recover damages under that claim. The Court declines to rule on the admissibility of evidence at the motion to dismiss stage, but instead will wait until the appropriate time, after discovery, to make that determination.

[30] *See White v. Tomasic*, 31 Kan. App. 2d 597, 69 P.3d 208, 211 (2003) ("Kansas recognizes a tort for discharge in retaliation for exercising rights under the Kansas Workers' Compensation Act.").

whether Carter believes the claims are one and the same. Regardless, the Court agrees with Spirit that Carter has failed to provide any facts that would support a claim under the Kansas Workers' Compensation Act itself. So, to the extent Carter is bringing a claim under the workers' compensation statute, the Court grants Spirit's motion to dismiss for failure to state a claim. Spirit does not seek dismissal of Carter's retaliation claim, and Carter may proceed under that cause of action.

### 3. K.S.A. § 60-1009

Spirit requests dismissal of Carter's claim brought under K.S.A. § 60-1009. It is clear to the Court the statute has no bearing on the facts in this case;[31] and, Carter admits in his Response that he meant to bring his claim under a different statute. As discussed above, the Court denies Carter's request to amend the complaint to correct his mistake because the claim under the corrected statute would still be subject to dismissal.[32] Since Carter cannot recover damages against Spirit under § 60-1009 that claim is hereby dismissed.

### 4. *Breach of Contract*

In Carter's Response, he clarifies that his "breach of contract" claim is a hybrid § 301 breach of contract/fair representation claim against Spirit and IAM.[33] Spirit argues the claim is

---

[31] K.S.A. § 60-1009 is a Kansas civil procedure statute that governs how the clerk of the court should distribute the proceeds from a court-ordered sheriff's sale of personal property.

[32] *See supra* III.A.

[33] In *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983), the United States Supreme Court explained the nature of a hybrid § 301 claim:

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one

barred by the statute of limitations. A hybrid § 301 claim caries a six-month statute of limitations, and when the statute of limitations begins to run "turns on the context in which the claim arose."[34] For example, if "the union rejects or abandons an employee's claim *during the grievance process*, the six-month limitations period begins to run when the employee learns, or in the exercise of reasonable diligence, should have learned of the union's action."[35] In other words, the statute of limitations begins when the employee should know that no future action will be taken on his grievance,[36] and it is irrelevant whether the employee received actual notice that his grievance had been dismissed by the union.[37]

Here, Carter received a letter from IAM and Spirit on November 17, 2015 that said Carter's grievances "[would] not be moved to the next level and are considered closed." Carter alleged in his Amended Complaint that this letter closed all five of his grievances. However, in his Response, Carter claims that he "recently . . . discovered" that IAM's letter only closed four of his five grievances, leaving his December 12, 2014 grievance still open. Carter argues that because there is a grievance still open the statute of limitations should not bar his claim.

---

defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. *DelCostello*, 462 U.S. at 164–165 (internal citations and quotations omitted).

[34] *Edwards v. Int'l Union, United Plant Guard Workers of Am. (UPGWA)*, 46 F.3d 1047, 1053–54 (10th Cir. 1995) (citation omitted).

[35] *Id.* (emphasis added) (citing *Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419 (10th Cir.1990)).

[36] *See Helms v. Yellow Freight Sys., Inc.*, 721 F. Supp. 277, 280 (D. Kan. 1989) (citing *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir.1986) *and Craft v. Auto, Petro. & A.I.E.U. Local 618*, 754 F.2d 800, 803 (8th Cir.1985)).

[37] *Carlton v. Local No. 7 United Food & Commercial Workers Int'l Union*, 43 F. App'x 289, 295 (10th Cir. 2002).

Because IAM rejected or abandoned Carter's claim, the statute of limitations began to run once Carter knew or should have known that IAM breached its duty to fairly represent his interests. Each of Carter's five grievances filed with IAM followed disciplinary action that Spirit took against Carter for his failure to notify his supervisors before he missed work. Carter was first given a verbal warning, then he was suspended twice, and eventually he was fired. The four grievances that were closed in Spirit's November 17, 2015 letter include those that were made in response to Carter's suspensions and firing. The December 12, 2014 grievance—which Carter claims is still open—was made in response to the first verbal warning Spirit gave Carter.

If IAM breached its duty to fairly represent Carter, then Carter should have known that the breach occurred based on the November 17, 2015 letter. IAM made it clear the union would not pursue Carter's grievances that were made in response to Carter's suspension and firing. Spirit's verbal warning to Carter was for the same conduct—tardiness and absenteeism—that resulted in Carter's more serious subsequent discipline. Although the November 17. 2015 did not specifically address Carter's December 12, 2014 grievance, the letter is clear that IAM would not be taking further action in support of Carter's complaint against the company. Therefore, the six-month statute of limitations began to run on November 17, 2015 when Carter knew or should have known that IAM breached its duty of fair representation. Carter brought his suit after the statute of limitations had lapsed, so Carter's hybrid § 301 claim against Spirit is also dismissed.

## IV. Conclusion

The Court denies Carter's motion for leave to file a second amended complaint because Carter did not comply with the Court's local rules when he failed to attach a copy of his proposed pleading and because Carter's proposed amendments would be futile. To clarify the scope of the Court's order striking Carter's surreply, the Court did consider Carter's "statement

of uncontroverted facts" before ruling on Carter's motion to amend. The Court denies as moot Spirit's request for leave to file a surreply addressing Carter's statement of facts. Lastly, the Court grants Spirit's partial motion dismiss: Carter's hybrid § 301 claim and his ADA claim arising out of his 2014 EEOC charge are barred by the statute of limitations, and Carter's claims under the Kansas Workers' Compensation Act and K.S.A. 60-1009 are dismissed for failing to state a claim.

**IT IS THEREFORE ORDERED** that Carter's Motion to Amend his First Amended Complaint (Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that Spirit's Partial Motion Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Spirit's Motion for Leave to file a Surreply (Doc. 54) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 27th day of October, 2017.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE